**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**BARBARA ONEASE TAYLOR**                                                             **PLAINTIFF**

**v.**                                                **CIVIL ACTION NO: 3:15-CV-221-SAA**

**COMMISSIONER OF SOCIAL SECURITY**                             **DEFENDANT**

## MEMORANDUM OPINION

Plaintiff Barbara Onease Taylor has applied for judicial review under 42 U.S.C. § 405(g) of the Commissioner of Social Security's decision denying her applications for disability insurance benefits (DIB) under Title II of the Social Security Act and for Supplemental Security Income (SSI) under Title XVI. Docket 11, pp. 286-87, 288-95. Plaintiff protectively filed applications for benefits on March 12, 2013, alleging disability beginning on May 4, 2012. Docket 11, pp. 286, 288. The agency administratively denied the plaintiff's claim initially and on reconsideration. Docket 11, pp. 181, 186, 193, 197. Plaintiff then requested an administrative hearing, which administrative law judge (ALJ) Larry J. Stroud held on September 23, 2014. Docket 11, pp. 83-102. The ALJ issued an unfavorable decision on November 14, 2014. Docket 11, pp. 6-21. The Appeals Council denied her request for review on November 9, 2015. Docket 11, pp. 1-3. Plaintiff timely filed this appeal from the November 14, 2014 decision, and it is now ripe for review.

Because both parties have consented to a magistrate judge conducting all the proceedings in this case as provided in 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment.

## I. FACTS

1

Plaintiff was born May 5, 1966, and was 48 years old at the time of the September 23, 2014 ALJ hearing. Docket 11, pp. 286, 86. She has a 10th grade education and past relevant work as a sampler – light exertional level – unskilled. Docket 11, pp. 86, 99. Plaintiff contends that she became disabled before her application for disability as a result of back pain, high blood pressure, diabetes with neuropathy and kidney problems. Docket 11, p. 149. After the September 23, 2014 hearing, the ALJ determined that plaintiff suffered from "severe" impairments of "degenerative disc disease of the lumbar spine, degenerative disc disease of the cervical spine, and obesity" [Docket 11, p. 11], but that her impairments did not meet or equal a listed impairment in 20 C.F.R. § 404, Subpart P, App. 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). Docket 11, p. 13. The ALJ determined that plaintiff retained "the Residual Functional Capacity [RFC] to: perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except she can only occasionally climb, stoop, crouch, crawl and kneel." Docket 11, p. 13. At steps four and five the ALJ rejected plaintiff's claims of disability, concluding that she is capable of performing past relevant work as a sampler [Docket 11, p. 15], and that there are other jobs which exist in significant numbers in the national economy which she can perform. Docket 11, p. 16. Consequently, he found plaintiff was not disabled.

Plaintiff argues the ALJ erred when deciding that she was not disabled under the Social Security Act by (i) finding that the plaintiff's diabetes was not a severe impairment; and (ii) substituting his judgment for that of objective medical evidence.

## II. EVALUATION PROCESS

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[1] The burden to prove disability rests upon plaintiff through the first four steps of the process, and if plaintiff is successful in sustaining her burden at each of the first four levels, the burden then shifts to the Commissioner at step five.[2] First, the plaintiff must prove she is not currently engaged in substantial gainful activity.[3] Second, the plaintiff must prove her impairment(s) are "severe" in that they "significantly limit [her] physical or mental ability to do basic work activities. . ."[4] At step three the ALJ must conclude that the plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1. §§ 1.00-114.09 (2010).[5] If the plaintiff does not meet this burden, at step four she must prove she is incapable of meeting the physical and mental demands of her past relevant work.[6] At step five, the burden shifts to the Commissioner to prove that, considering plaintiff's residual functional capacity, age, education and past work experience, she is capable of performing other work.[7] If the Commissioner proves other work exists which plaintiff can perform, plaintiff is then given the chance to prove that she

---

[1] 20 C.F.R. § 404.1520; 416.920 (2010)

[2] *See Crowley v. Apfel*, 197 F.3d 194, 198 (5th Cir. 1999).

[3] 20 C.F.R. § 404.1520(b); 416.920(b) (2010).

[4] 20 C.F.R. § 404.1520(c); 416.920(c).

[5] 20 C.F.R. § 416.920(d) (2010). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416.925 (2003).

[6] 20 C.F.R. § 416.920(e) (2010).

[7] 20 C.F.R. § 416.920(g) (2010).

cannot, in fact, perform that work.[8]

### III. STANDARD OF REVIEW

The court's scope of review is limited. On appeal the court must consider whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Crowley*, 197 F.3d at 196, citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). In making that determination, the court has the responsibility to scrutinize the entire record. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner,[9] even if it finds the evidence leans against the Commissioner's decision.[10]

The Fifth Circuit has held that substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley*, 197 F.3d at 197 (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court's inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the ALJ's conclusions. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crowley*, 197 F.3d at 197. "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed."

---

[8] *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

[9] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[10] *See Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *see also Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1998).

*Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson*, 402 U.S. at 390.

## IV. DISCUSSION

A.  **Did the ALJ Err in Finding That the Plaintiff's Diabetes Was a Non-Severe Impairment?**

Plaintiff argues that the ALJ violated the provisions of *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985) by finding plaintiff's diabetes to be a non-severe impairment. Docket 15, p. 5. The Commissioner responds that the ALJ thoroughly analyzed and articulated his findings at step two, including a specific reference to *Stone*, and correctly weighed the medical evidence regarding diabetes. Docket 16, p. 5. Even if the court determined plaintiff's diabetes to be "severe," says the Commissioner, plaintiff's case should not be remanded on this basis absent a showing that the error was not harmless, *i.e.*, that the physical symptoms of diabetes resulted in any work-related functional limitations. *Id*, p. 7.

Step two in the sequential analysis requires an ALJ to determine whether a claimant has a medically determinable impairment, or a combination of impairments, that can be described as "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). The Fifth Circuit uses a particular standard to determine whether a claimant's impairment is severe:

> An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment is not severe only if it is slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.

*Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985); *see also Loza v. Apfel*, 219 F.3d 378, 390-91 (5th Cir. 2000) (reaffirming this standard following federal regulatory revisions).

Having reviewed the record, the court concludes that the ALJ properly evaluated the

5

severity of plaintiff's diabetes. The ALJ specifically cited *Stone* and the proper severity standard. Docket 11, p. 13. He observed that Dr. Justin Brewer, who performed a consultative examination on April 27, 2013, opined that plaintiff's diabetes had not left her with any real functional disability. Docket 11, pp. 13, 412-416. The ALJ also noted that even though records from the Sumner Clinic showed some occasional extremity tingling, the majority of the clinic records reference plaintiff's diabetes as "uncomplicated."[11] Accordingly, substantial evidence supports the ALJ's conclusion that plaintiff's diabetes is a slight abnormality that has such minimal effect that it would not be expected to interfere with her ability to work, irrespective of age, education or work experience.

**B.    Did the ALJ Err By Substituting His Judgment For That Of Objective Medical Evidence?**

In her second argument, plaintiff asserts the ALJ failed to consider all the record evidence and "cherry picked" evidence by making no reference to a June 16, 2010 MRI that showed a C4-5 central disk bulge causing mild mass effect on the anterior aspect of the cord, both neural foramen bilaterally, and osteoarthritis and degenerative disk disease, as well as hemangioma at the C5 level. Docket 15, pp. 6-7. The Commissioner responds that (1) because the June 16, 2010 MRI relates to a time period addressed by plaintiff's prior disability application which was denied and not appealed, the ALJ properly excluded the MRI from consideration; and (2) there was ample medical evidence to support the RFC given by the ALJ in the current case.

As an initial matter, the court disagrees with the Commissioner's argument that *res*

---

[11] Docket 11, pp. 13, 381, 384, 393, 420, 423, 427, 434, 439, 457, 463, 470, 475, 486, 494, 497, 506, 521, 529, 535, 542, 547, 555, 558, 569, 578.

*judicata* applies to the June 16, 2010 MRI which was considered by an ALJ in a prior application for benefits. First, plaintiff's prior application for benefits considered a different time period, and the adjudicated period for the current application did not overlap with her previous application. *See Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996) (rejecting the argument that the "first ALJ's findings established" claimant's "maximum [RFC] – at that time and forever more" because the first "was a binding determination. . . for that time period. It has no effect, however, on an application . . . for a subsequent time period."). Furthermore, according to Social Security's own rulings:

> [I]f the subsequent claim involves deciding whether the claimant is disabled during a period that was not adjudicated in the final determination or decision on the prior claim, SSA considers the issue of disability with respect to the unadjudicated period to be a new issue that prevents the application of administrative *res judicata*. Thus, when adjudicating a subsequent disability claim involving an unadjudicated period, SSA considers the facts and issues *de novo* in determining disability with respect to the unadjudicated period.

*See* AR 98–4(6). Thus, under the case law and SSA rulings, the court finds that the ALJ was not precluded from reviewing and incorporating the June 16, 2010 MRI. The true issue here is whether the ALJ's not addressing and incorporating the MRI into his November 14, 2014 decision amounts to the application of an incorrect legal standard.

Conflicts in the evidence are for the Commissioner to decide; if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court finds that the ALJ's RFC was more than substantially justified. Throughout his decision, the ALJ acknowledged and thoroughly discussed plaintiff's well-documented history of back problems, including:

- May 6, 2010 - x-ray of the cervical spine which showed mild cervical spondylosis, most prominent at C3-C4, with mild encroachment of the neural

7

- foramina. Docket 11, p. 407.

- May 6, 2010 - x-ray of the thoracic spine which showed mild degenerative arthritis and osteoporosis. Docket 11, p. 408.

- August 2, 2010 - treatment at North Central Mississippi Neurological Surgery Clinic – diagnosis of lumbar and cervical spondylosis with prescription for Tramadol and Flexeril - recommendation of outpatient physical therapy. Docket 11, p. 445.

- May 16, 2011 – treatment at Greenwood Leflore Hospital for moderate lumbar spasm, antalgic gait, paraspinal lumbar tenderness, and pain with lumbar range of motion - diagnosis of lumbar and cervical spondylosis - prescription for Lortab. Docket 11, 447-48.

- 2012 – Eight office visits throughout the year at Sumner Clinic for back and neck pain - prescriptions given for Flexeril, Tramadol and Lortab - recommendations for massages and warm compresses. Docket 11, pp. 374-410.

- January 25, 2013 – treatment at Sumner Clinic for muscle spasms - prescription for Flexeril and Tramadol and a recommendation for massage and warm compresses. Docket 11, p. 381.

- April 27, 2013 – consultative examination by Dr. Justin Brewer who found that plaintiff was in no apparent distress, was able to get on and off the exam table and up and out of the chair, had the ability to dress and undress without difficulty or assistance, ambulated without much difficulty, had a gait within normal limits, had full and unrestricted range of motion in all joints, was minimally tender to palpation, had a negative straight leg raising with sitting and supine, was able to lay [sic] straight back on the table without difficulty, could walk on her heels and toes, and had five out of five motor strength in all the proximal muscle groups. Docket 11, pp. 412-416.

- September 23, 2013 - treatment at Sumner Clinic for tenderness and tightness in the right trapezius - prescription for Flexeril and Tramadol - recommendation of massage and warm compresses. Docket 11, pp. 468-471.

- January 14, 2014 – treatment at Sumner Clinic for back pain, but no observed symptoms consistent with plaintiff's complaints. Docket 11, pp. 461-464.

- June 23, 2014 – treatment at Sumner Clinic for back pain – there were no musculoskeletal or neurological exam findings, but the nurse practitioner diagnosed plaintiff with lumbrosacral spondylosis without myelopathy and ordered plaintiff to take Tylenol as needed. Docket 11, pp. 455-458.

Thus, this is not a case where the ALJ ignored or failed to acknowledge a plaintiff's claim of a physical impairment. The responsibility to determine the plaintiff's residual functional capacity belongs to the ALJ, *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995), and in making this determination he must consider all the evidence in the record, evaluate the medical opinions in light of other information contained in the record, and determine the plaintiff's ability despite her physical and mental limitations. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). However, the ALJ may not establish physical limitations or lack of them without medical proof to support that conclusion. *Patterson v. Astrue*, 2008 WL 5104746, *4 (N.D. Miss. 2008), citing *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

The court finds that the ALJ provided ample support for his finding that the plaintiff's lumbar and cervical degenerative disc disease are "severe," and that he fashioned his RFC to incorporate those limitations. Furthermore, that the ALJ did not specifically cite to each and every piece of medical evidence considered does not establish an actual failure to consider the evidence. *Castillo v. Barnhart*, 151 Fed.Appx. 334 (5th Cir. 2005), citing *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994) (rejecting as unnecessary rule requiring ALJ to specifically articulate evidence that supported decision and discuss evidence that was rejected). For these reasons, plaintiff's second argument is without merit.

## V. <u>CONCLUSION</u>

After diligent review, the court concludes that the ALJ's decision was supported by substantial evidence and applied the proper legal standards. The Commissioner's decision is affirmed, and the case is closed. A final judgment in accordance with this memorandum opinion will issue this day.

9

**SO ORDERED**, this the 26th day of July, 2016.

                 <u>s/ S. Allan Alexander</u>
                 UNITED STATES MAGISTRATE JUDGE